## THE DEUTSCHLAND.

### (District Court, S. D. New York. April 23, 1904.)

1. COLLISION—STEAMER AND SAILING VESSEL—STEAMSHIP TURNING IN NEW YORK BAY.

   The Deutschland, a large steamship 687 feet long, after having been passed by the health officer at the quarantine station, Staten Island, where she had been at anchor, headed downstream on account of the flood tide, undertook to swing around with her head to the eastward, and in doing so backed, and her propeller hood came into collision with the Snow, a small schooner which had also just been released from quarantine, and had started northward at a distance of some 130 feet astern of the steamship before the latter backed. She made an effort to get out of the way, but could not do so in time. The Deutschland had no lookout astern, and, according to the weight of the evidence, gave no backing signal. *Held*, that for such reasons she was solely in fault for the collision.

In Admiralty. Suit for collision.

Wing, Putnam & Burlingham, for libellants.

Wheeler, Cortis & Haight, for claimant.

ADAMS, District Judge. This action arose out of a collision which occurred between the libellants' schooner Lavinia M. Snow, laden with lumber, and the steamship Deutschland, off a point somewhat above the Quarantine Station, Staten Island, about 8 o'clock on the morning of the 8th day of September, 1903. The Snow, about 133 feet long, having been passed by the Quarantine Health Officer, was standing to the northward under reduced sail, close hauled on the starboard tack, well to the westward of the channel. Being aided by a flood tide of about 2 knots strength, she was making about 4 knots over the ground. The steamship, which had also been passed by the Health Officer, was manœuvring to get a heading up the bay so as to reach her wharf in the North River. She was 687 feet long. The flood tide necessitated a heading down the bay on the part of the steamship while at anchor. When she became entitled to proceed, she hauled around to the northward, through the east. As she was turning and headed somewhat across the channel, the collision occurred, the steamship's submerged rudder hood coming in contact with the schooner's starboard side, causing such damage to the latter that she nearly sank.

The schooner charges that the collision and damages were wholly due to the steamship, in that she backed without any signals or warning; did not have a lookout properly stationed; miscalculated the force of the current and did not have a tug to aid her; did not seasonably check her sternway, and did not keep clear of the schooner.

The steamship's answer, after alleging the difficulty of turning a ship the size of this steamship, alleges:

"Seventh. And further answering the libel herein, and as a separate and distinct defence thereto, claimant alleges that on the said 8th day of September, 1903, the Steamship 'Deutschland' arrived at Quarantine, having completed a voyage from Hamburg, Germany, to the Port of New York. Said 'Deutschland' was in all respects tight, staunch, well manned and equipped, and in charge of a competent Master and officers. A competent pilot was on the bridge, having brought the vessel in from sea, and was directing her

movements through the channel to her wharf in the North River. Competent lookouts were properly stationed, and attending to their duties. While anchored at Quarantine, the 'Deutschland's' bow was pointing down stream, owing to the strong flood tide, and upon raising her anchor it became necessary to turn in a comparatively narrow and crowded channel, for the purpose of proceeding up stream to her wharf. The 'Deutschland' is a steamship of ——— thousand tons, being one of the largest and most powerful steamships afloat. To turn such a vessel in the channel off Quarantine is a matter of some difficulty, and is naturally conducted with great care. Upon this occasion the 'Deutschland' was turned in the usual method, by driving one engine ahead and reversing at reduced speed with the other engine. By this method the vessel swings around as on a pivot, her stern moving but little ahead during the operation, until nearly straightened on her course. During this manœuvre, and while the 'Deutschland' was pointing nearly across the channel, with her head to the eastward, the 'Snow,' being unskillfully and negligently handled, and approaching head on to the 'Deutschland's' starboard quarter, endeavored too late to pass under the 'Deutschland's' stern, and in so doing came in contact with the 'Deutschland' about or slightly below the surface of the water. There was plenty of room for the 'Snow' to have passed well astern of the 'Deutschland,' and the direction of the wind was entirely in favor of the schooner, in executing such a manœuvre. At the time that the 'Snow' approached sufficiently near to the 'Deutschland' to make a collision appear possible, the 'Deutschland' had no sternway, had little, if any, headway, and so far as her ability to avoid a collision was in question, was practically in the position of a vessel at anchor. Her engines were at once put at full speed ahead, in order to prevent a collision, if possible, and in any event, to co-operate with the 'Snow' in her tardy efforts to avoid a collision."

The answer then alleges that the schooner was solely in fault in that she (1) attempted to pass too close to the steamship's stern, when there was plenty of room to give her a wide berth; (2) in overestimating the speed of the steamship, or underestimating the strength of the tide, or both, and in delaying her attempt to pay off until too late to be successful; (3) that the master or other person in charge of the Snow was either grossly incompetent or grossly incapable and inattentive, as the collision which insued was not contributed to in any degree by a difficult or unusual situation, or the proximity of other vessels, but was the result of an act of stupid and reckless management on the part of the persons having in charge the movements of the schooner.

The evidence shows that at the time of collision, the Deutschland was headed across the bay and was going astern through the water towards the Staten Island shore. It would not be profitable to discuss the testimony in detail. Considerable of it comes from disinterested sources and to my mind shows conclusively that the collision, which occurred about on the line of the anchorage ground, was caused by a backward movement on the steamship's part. There is a conflict with respect to whether or not the steamship sounded any backing signal. The weight of the testimony shows that she did not. She had no lookout astern.

The schooner, after obtaining *pratique*, was headed up the bay, about north or north east, intending to pass about her own length astern of the steamship, then apparently simply endeavoring to get a heading towards New York by a turning movement of her screws. When the schooner observed the backward movement of the steamship, about 400 feet away, and that she was closing in on the course of the schooner, the master of the latter ordered the helm to be put to star-

board, dropped the mizzen topsail and let the spanker sheet run off to facilitate the rudder action. This brought the schooner around to a heading of about north north west but it did not serve to avoid the collision, which occurred by the hood coming in hard collision with the schooner's side about opposite the main rigging.

There is little contention with respect to the retrograde movement of the steamship. The testimony of her pilot shows, and it is practically admitted, that during the turning manœuvre, there was some sternway. The claimant's principal contention seems to be that the steamship had, because of her size, the right of way and it was the schooner's duty to avoid her. No authorities, however, have been submitted in support of such contention, and however strongly the argument that comparatively small sailing vessels should give way to these large steamships might commend itself to the court, it would be in violation of ordinary rules to apply it to this case. Evidently the steamship should not have backed without seeing whether there was anything in the way of such manœuvre and certainly should not have done so without signals. The faults are plain on her part and sufficiently account for the collision.

Decree for the libellants with an order of reference.